UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

SHAWN MURPHY,

                Plaintiff,

v.                                       Case No. 16-cv-1462-pp

NIKKI KAMPHUIS AND JAMES MUENCHOW,

                Defendants.

---

**DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS* (DKT. NO. 2), SCREENING PLAINTIFF'S COMPLAINT (DKT. NO. 1), DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 12), DENYING PLAINTIFF'S MOTION FOR RELIEF OF COMMUNICATION BARRIERS (DKT. NO. 13), AND DIRECTING PLAINTIFF TO FILE AN AMENDED COMPLAINT BY AUGUST 4, 2017**

---

      Plaintiff Shawn Murphy is representing himself, and is a prisoner at Waupun Correctional Institution. He filed this lawsuit alleging that the defendants violated his rights under Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. §12132. The case is before the court for a decision on the plaintiff's request to proceed without prepaying the full filing fee (Dkt. No. 2), for screening of his complaint (Dkt. No. 1), and a decision on the plaintiff's motion to appoint counsel (Dkt. No. 12) and motion for relief of communication barriers (Dkt. No. 13).

I.     <u>Request to Proceed without Prepaying the Full Filing Fee (Dkt. No. 2)</u>

      The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. The

PLRA allows a court to give an incarcerated plaintiff the ability to proceed with his lawsuit without prepaying the case filing fee, as long as he meets certain conditions. One of those conditions is a requirement that the plaintiff pay an initial partial filing fee. 28 U.S.C. §1915(b). Once the plaintiff pays the initial partial filing fee, the court may allow the plaintiff to pay the balance of the $350 filing fee over time through deductions from his prisoner account. Id.

On November 7, 2016, the court entered an order requiring the plaintiff to pay an initial partial filing fee of $1.83. Dkt. No. 6. The plaintiff paid that fee on January 13, 2017. Accordingly, the court grants his request to proceed without prepaying the full filing fee and allows him to pay the balance of the $350.00 filing fee over time from his prisoner account, as described at the end of this order.

II.     Screening of the Plaintiff's Complaint

   A.     *Applicable Law*

The law requires the court to screen complaints brought by prisoners seeking relief against a governmental entity, or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint or portion thereof if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

To state a cognizable claim under the federal notice pleading system, the plaintiff must provide a "short and plain statement of the claim showing that

[he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). A plaintiff does not need to plead specific facts, and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint that offers "labels and conclusions," however, or "formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Id. (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted).

In considering whether a complaint states a claim, courts follow the principles set forth in Twombly. First, they must "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. A plaintiff must support legal conclusions with factual allegations. Id. Second, if there are well-pleaded factual allegations, courts must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that the defendants: 1) deprived him of a right secured by the Constitution or

laws of the United States; and 2) acted under color of state law. Buchanan-Moore v. Cnty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court is obligated to give the plaintiff's *pro se* allegations, "however inartfully pleaded," a liberal construction. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

B.   *The Plaintiff's Allegations*

The plaintiff is incarcerated at Waupun Correctional Institution (Waupun). Dkt. No. 1 at 1. Defendant Nikki Kamphuis is the business office manager and ADA coordinator at Waupun. Id. at 2. Defendant James Muenchow is the institution complaint examiner there. Id. at 5.

The plaintiff has "serious mental health problems," and he allegedly needs "accommodations for equal access to the court." Id. at 2. He arrived at Waupun on March 25, 2014. Id. On May 2, 2014, the plaintiff asked ADA Coordinator Kamphuis for help to try to fix "the court mess I found myself in." Id. The plaintiff asked for "an accommodation for some kind of legal aid" because he couldn't help himself due to his "mental health and documented limitations." Id. at 3. Kamphuis denied the plaintiff's requests, stating that Waupun doesn't provide help "doing lawsuits." Id.

On May 28, 2014, the plaintiff asked for more time in the law library due to problems using the computer (he states that he could copy only two or three letters at a time). Id. Kamphuis denied the request. Id. She said she contacted

4

Waupun's education director to research the plaintiff's claim that he had learning problems, but she denied the plaintiff's request for more library time without documentation. Id. The plaintiff sent a request slip to Kamphuis, telling her that there were records at Waupun documenting his learning disorder and mental health issues. Id. Kamphuis told the plaintiff to provide her the records, but he couldn't get copies of the records because he had no income. Id. Kamphuis would not give the plaintiff a legal loan to get the records. Id.

Kamphuis denied the plaintiff's requests for accommodations on April 7, 2015; July 2, 2015; September 21, 2015; and November 7, 2015. Id. at 4. At that point, she wouldn't give him any "DOC-2530 accommodation forms, nor would she reply to any information request." Id.

The plaintiff asserts that since May 30, 2014, Kamphuis repeatedly has told the plaintiff that he needed to give her documentation of his disabilities, and he has responded that the documentation is in the records at Waupun. Id. The plaintiff says that he can't get the copies on his own. Id. He states that he discovered that Kamphuis was lying to him, because one day he went to library to look at institution policy on the ADA, and he discovered that under policy #300.00.35 the ADA coordinator should contact the Health Unit to check for documentation about disabilities. Id. The plaintiff states that Kamphuis never has done this. Id.

On June 8, 2016, the plaintiff sent Kamphuis a copy of his psychiatric report to try to pin her down as having seen the report so that she would have

to act on it. Id. Kamphuis then stated, "if there was an actual ADA reason to review these records then they would be [sic]." Id.

The plaintiff filed inmate complaints after Kamphuis allegedly failed to accommodate his disability. Id. at 5. Following one inmate complaint, defendant Muenchow, who is the inmate complaint examiner ("ICE"), stated that the plaintiff did not qualify for any type of ADA accommodation. Id. Muenchow allegedly stated in the ICE Report:

> His support for accommodation request, i.e., the write well [sic], dyslexia, spelling problems, etc. is completely dismantled, if not through factual information provided by Education Director Reid, by the sheer number of well-articulated correspondences to Ms. Kamphuis and several complaint submissions here.

Id. at 6.

Muenchow did not review the plaintiff's health record related to this offender complaint (2014-19273), or the one related to another complaint that the plaintiff filed in October 2016. Id. Muenchow rejected the latter inmate complaint because it had previously addressed in a different complaint. Id. The plaintiff disagrees with the rejection, and wonders how a complaint can be rejected as previously addressed if the complaint is about how Kamphuis denied his request for accommodations. Id. The plaintiff states that this is part of his problem at Waupun and that he has "piles of rejected complaints all like this." Id.

The plaintiff alleges that he is a qualified individual with a disability under the ADA based on his mental health and learning disorders:

6

"bipolar affective, learning, posttraumatic stress, borderline personality and substance addiction." Id. at 7-8.[1] The plaintiff also states that he suffered the following harm:

> No equal access to programs, services and activities. If I cannot get meaningful access to the court because of my limitations [sic]. So far because of Mr. Muenchow vindictive ac[tions] could not file a meaningful no-merit appeal. Trying to have the court of appeal[s] grant me a review of my case and because of Ms. Kamphuis and Mr. Muenchow my trying to get a review to WI Supreme Court is now lost my right to have a review at the Supreme Court [sic]. My mental health problems this statement only covers a part of the harm [sic]. After you read this statement I believe you can see why I have become psychotic at times.

Id. at 8.

For relief, the plaintiff seeks unspecified monetary damages for years of the defendants' "vindictive torture," which took the form of refusing to accommodate his disabilities. Id. at 9. He also seeks injunctive relief, asking the court to order the defendant to provide the necessary accommodations for his disabilities so that he can litigate. Id. The plaintiff specifies the following accommodations he seeks: books, legal aid, electronics, a "pad" so he can type in his cell, spell check, ability to print documents in the library, storage of copies, "direct speech, you talk and your words are put into documents," and possibly a Kindle. Id.

---

[1] The plaintiff states that the Social Security Administration determined that he was "not disabled," possibly on March 2, 2015. Id. at 7. He states that this has no bearing on whether he has a disability under the ADA. Id. The plaintiff points out that the Social Security Administration acknowledged his history of severe impairments. Id. at 7-8.

The plaintiff attached a document to the complaint in which he states that he needs to add five defendants to the complaint. Dkt. No. 1-1 at 1. He states that it is beyond his ability to "do all of the complaint which is why I need all the help [the] court would grant me and/or any ADA accommodation I could have." Id.

C. *Analysis*

To establish a violation of Title II of the ADA, "the plaintiff must prove that he is a 'qualified individual with a disability,' that he was denied 'the benefits of the services, programs, or activities of a public entity' or otherwise subjected to discrimination by such an entity, and that the denial or discrimination was 'by reason of' his disability." Wagoner v. Lemmon, 778 F.3d 586, 592 (7th Cir. 2015) (quoting Love v. Westville Corr. Ctr., 103 F.3d 558, 560 (7th Cir. 1996)); see also 42 U.S.C. §12132. The term "qualified individual with a disability" means,

> an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. §12131. Analysis under the Rehabilitation Act ("RA") is essentially the same, except that the RA includes an additional element requiring that the entity denying access receive federal funds.[2] Jaros v. Ill. Dep't of Corr., 684 F.3d 667, 671-72 (7th Cir. 2012). "[B]ecause the ADA addresses its rules to

---
[2] The plaintiff does not mention the RA in the complaint, but he does mention it as a potential claim in later filings. See Dkt. Nos. 12, 13.

8

employers, places of public accommodation, and other organizations, not to the employees or managers of these organizations," a plaintiff may not sue defendants in their individual capacities – the proper defendant is the organization, or the individual in his or her official capacity. Walker v. Snyder, 213 F.3d 344, 346 (7th Cir. 2000) (overruled on other grounds).

The plaintiff alleges that the defendants repeatedly failed to make reasonable accommodations for his disabilities, which meant that they denied him meaningful access to the courts (a public entity). It is not clear whether the plaintiff means to allege that the defendant denied him the reasonable accommodations because of his disability, but at this early stage in the litigation, the court will allow him to proceed on his claims under the ADA and the RA. 42 U.S.C. §12131; Sch. Bd. of Nassau Cty v. Arline, 480 U.S. 273, 288 n.17 (1987) (requirement for "reasonable accommodations" under the RA). The court will allow the plaintiff to proceed against the defendants in their official capacities.

While the plaintiff does not specifically mention it, the court perceives that he also may be attempting to state a claim that the defendants violated his civil rights under §1983 by denying him his constitutional right to meaningful access to the courts. See Bounds v. Smith, 430 U.S. 817, 821 (1977) ("It is now well established beyond doubt that prisoners have a constitutional right of access to the courts."). "Meaningful access" includes access to law libraries and "basic scribe materials for the preparation of legal papers." Gentry v. Duckworth, 65 F.3d 555, 558 (7th Cir. 1995) (citations omitted). To show a

denial of the right to meaningful access to the courts, a plaintiff must show two things. First, he must demonstrate that the prison officials did not "assist in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Id. (citations omitted). Second, the plaintiff must show "some quantum of detriment caused by the challenged conduct of state officials resulting in the interruption and/or delay of plaintiff's pending or completed litigation." Id. (citations omitted).

The plaintiff has alleged sufficient facts to support a claim that he has been denied meaningful access to the law library and to materials that he believes he needs to help him prepare legal papers. While he has not clearly explained what court cases he needs to work on, he has alleged that he is in some "court mess." In other filings, he referred to a case he had in this court, 16-cv-438. While he voluntarily dismissed that case on August 8, 2016, it is possible that the plaintiff is asserting that he was not able to litigate that case as he wanted to due to the denial of access to the court. Again, because of the early stage of the litigation, the court will allow the plaintiff to proceed on a §1983 case alleging violation of his constitutional right to meaningful access to the courts.

As noted above, the plaintiff told the court that he'd wanted to name five other defendants in his complaint, but that he'd been too overwhelmed to be able to do so. The court is going to allow the plaintiff to file an amended complaint. The court will mail the plaintiff a *pro se* complaint form which he

should use to prepare that amended complaint. He should write the word "Amended" at the top of the first page, next the word "complaint." In this amended complaint, the plaintiff should include the names (and job titles, if he knows them) of all of the defendants he wishes to sue. He should briefly explain what each of those defendants did to deny him his rights under the ADA, under the RA or under the constitution. At this stage, the plaintiff does not need to cite court cases or give legal arguments—all he needs to do is to state what he believes each defendant did.

III. The Plaintiff's Motion to Appoint Counsel

The plaintiff has filed a motion to appoint counsel. Dkt. No. 12. He states that he has contacted fifteen attorneys in an attempt to find one on his own. The plaintiff also states that he will have surgery soon to cut nerves from his nervous system, which hopefully will stop the pain he has been living with for the last three years. Finally, the plaintiff reiterates that he would like to file an amended complaint adding five more defendants.

In a civil case, the court has discretion to decide whether to recruit a lawyer for someone who cannot afford one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C § 1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). First, however, the person has to make a reasonable effort to hire private counsel on their own. Pruitt v. Mote, 503 F.3d 647, 653 (7th Cir. 2007). After the plaintiff makes that reasonable attempt to hire counsel, the court then must decide "whether the difficulty of the case – factually and legally – exceeds the particular plaintiff's capacity as a layperson

11

to coherently present it." Navejar, 718 F.3d at 696 (citing Pruitt, 503 F.3d at 655). To decide that, the court looks, not only at the plaintiff's ability to try his case, but also at his ability to perform other "tasks that normally attend litigation," such as "evidence gathering" and "preparing and responding to motions." Id.

In this case, the court finds that, by contacting fifteen attorneys, the plaintiff has made a reasonable attempt to find counsel on his own. That means that he has satisfied the first Pruitt factor. With regard to the second Pruitt factor, however, the court finds that, at this stage, the case is not so complex that the plaintiff cannot present it himself. The plaintiff has filed a number of documents in this case, and they show that he is able to explain his claims clearly enough for the court to understand them. Indeed, he does more work than he needs to do, given that a plaintiff is not required to cite case law or make legal arguments in a complaint. The court received a letter from the plaintiff on April 17, 2017—in this letter, the plaintiff acknowledges that his pleadings may cause the court to believe that he is capable of litigating the case on his own. Dkt. No. 14. He argues, however, that it has taken him years of hard work to get to the point where he can communicate this effectively. He argues that it takes him a very long time to prepare his documents, and that he needs a tablet or word processor or other devices to be able to "equal the playing field" with the defense. Id. at 2. He says he has trouble getting his thinking down on paper the right way, and that he needs a kind of "translator" to help get the words from his head to the page. Id. at 3. He argues that he

does not need legal help—he needs devices and the assistance of this "translator." Id.

The court acknowledges that it probably is very difficult for the plaintiff to write out his documents with a pen or pencil and paper. Many inmates share this same difficulty with the court. It must be very frustrating. But the court disagrees that the plaintiff doesn't get his words right on the page—the court understands his words, and understands what he is complaining of. Because almost every inmate who files a lawsuit asks the court to appoint a lawyer, and because the court does not have the resources to appoint counsel for all of those inmates (or even for a fraction of them), the court does not appoint counsel until the case reaches the point where it is clear to the court that the plaintiff cannot handle the litigation on his own. This case has not yet reached that point.

The court will deny the plaintiff's motion without prejudice, which means that he may raise it again later if the case becomes more complicated. The plaintiff also may ask the court for more time to file the amended complaint, if medical issues interfere with his ability to file by the date the court sets below.

IV. The Plaintiff's Motion for Relief of Communication Barriers

The plaintiff has filed a motion for relief of communication barriers from mental impairments (learning disorders) that interfere with his participation in services, programs, and activities of a public entity, *i.e.,* the court. Dkt. No. 13. He asks the court for accommodations under the ADA and RA "to rules, policies or practices that could be discriminatory because of my limitation

13

stop[p]ing me from communicating with the court in a way I have to for meaning[ful] court access." Dkt. No. 13 at 1. According to the plaintiff, if he cannot put his words to court documents in a proper way he cannot function in this court. Id. The plaintiff suggests recruitment of an attorney, other people to help him function, or "auxiliary aids and services." Id.

The court already has determined that the plaintiff does not need an attorney at this time (although he is free to renew his motion to appoint counsel later). The court has found that the plaintiff is able to litigate on his own right now, at this early stage of the process. And while procedural rules apply to *pro se* litigants (like the plaintiff) just as they apply to litigants who have attorneys, the court understands that the plaintiff doesn't have an attorney, and will try to explain what is happening in this case in more detail than it would to a litigant who had an attorney. Finally, the court will mail the plaintiff a *pro se* guide, Answers to Prisoner Litigants' Common Questions, along with this order. Because the court does see any communication barriers at this time, the court will deny the plaintiff's motion for relief.

V.   Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed *in forma pauperis*. Dkt. No. 2.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to appoint counsel. Dkt. No. 12.

The court **DENIES** the plaintiff's motion for relief of communication barriers. Dkt. No. 13.

14

The court **ORDERS** that on or before **August 4, 2017**, the plaintiff may file an amended complaint as described in this order.

The court **ORDERS** that the Secretary of the Wisconsin Department of Corrections or his designee shall collect from the plaintiff's prisoner trust account the $348.17 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The Secretary or his designee shall clearly identify payments by the case name and number.

The court will mail a copy of this order to the Warden of Waupun Correctional Institution, 200 S. Madison Street, P.O. Box 351, Waupun, Wisconsin, 53963-0351.

The court will mail the plaintiff a prisoner complaint form and the *pro se* guide, Answers to Prisoner Litigants' Common Questions, along with this order.

The court **ORDERS** that, under the Prisoner E-Filing Program, the plaintiff shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. The Prisoner E-Filing Program is in effect at Dodge Correctional Institution, Green Bay Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility and, therefore, if the plaintiff is no longer incarcerated at one of those institutions, he will be required to submit all correspondence and legal material to:

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he misses filing deadlines the court sets, it may result in the dismissal of his case for failure to prosecute. The parties shall notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated in Milwaukee, Wisconsin this 20th day of June, 2017.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**United States District Judge**