UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

SHAWN MURPHY,

      Plaintiff,

v.            Case No. 16-cv-1462-pp

NIKKI KAMPHUIS, JAMES MUENCHOW,
MS. HARTMAN, B. FISHER,
S. SCHMIDT, DR. DEBLANC,
WISCONSIN DEPARTMENT OF CORRECTIONS,
and JOHN DOE,

      Defendants.

---

**DECISION AND ORDER DENYING AS MOOT PLAINTIFF'S MOTION FOR EXTENSION OF TIME TO FILE AMENDED COMPLAINT (DKT. NO. 20), DENYING AS MOOT PLAINTIFF'S SECOND MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE (DKT. NO. 22), SCREENING AMENDED COMPLAINT UNDER 28 U.S.C. §1915A, DENYING WITHOUT PREJUDICE SECOND MOTION TO APPOINT COUNSEL (DKT. NO. 25), DENYING MOTION TO USE RELEASE ACCOUNT FOR COPIES (DKT. NO. 25), AND GRANTING MOTION FOR STATUS OF CASE (DKT. NO. 27)**

---

  Plaintiff Shawn Murphy, who is representing himself, is a prisoner at Waupun Correctional Institution. He filed this lawsuit against defendants Kamphuis and Muenchow, alleging that they violated his rights under Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. §12132. Dkt. No. 1. On June 20, 2017, the court screened the complaint and allowed the plaintiff to proceed on claims under the ADA and the Rehabilitation Act (RA), as well as a claim that he had been denied access to the courts. Dkt. No. 18 at 8-11. The court also allowed the plaintiff to file an amended complaint, based on his

1

assertion that he wanted to sue five additional defendants. Id. at 10. On September 5, 2017, the plaintiff filed his amended complaint. Dkt. No. 21.

I. **Motion for an Extension of Time to File Amended Complaint (Dkt. No. 20)**

In its August 7, 2017 order, the court required the plaintiff to file his amended complaint in time for the court to receive it by September 8, 2017. Dkt. No. 18. On August 31, 2017, the court received a motion from the plaintiff. Dkt. No. 20. He explained that he had a number of mental health conditions, and that he was not receiving care for those conditions, which resulted in a manic episode. Id. at 1. He asked that, if the court did not receive his amended complaint by the September 8, 2017 deadline, it understand that it was because of the lack of proper medical care, and it allow the plaintiff to proceed on his original complaint. Id. at 2. On September 5, 2017, however—three days before the deadline the court had set—the court received the plaintiff's amended complaint. The court will deny as moot the plaintiff's motion to extend the time for him to file the amended complaint. Dkt. No. 20.

II. **Second Prisoner Request to Proceed in District Court Without Prepaying the Full Filing Fee (Dkt. No. 22)**

The court received the plaintiff's first request to proceed without prepaying the filing fee on November 1, 2016. Dkt. No. 2. The court responded by requiring the plaintiff to pay an initial partial filing fee of $1.83. Dkt. No. 6. The plaintiff then filed a supplement to his motion, dkt. no. 8; a supplemental copy of his inmate trust account, dkt. no. 9; and a motion asking the court to reconsider its order requiring him to pay an initial partial filing fee, dkt. no. 10.

The court issued an order allowing the plaintiff to pay the initial partial filing fee out of his release account. Dkt. No. 11. A little over two weeks later, the court received the $1.83 initial partial filing fee. Accordingly, the court granted the plaintiff's motion to proceed without prepaying the filing fee. Dkt. No. 15.

It is not clear to the court why the plaintiff has filed another request to proceed without prepaying the filing fee. Dkt. No. 22. Perhaps what the plaintiff is really asking is for the court to issue an order telling him that he does not have to pay the remaining balance of the filing fee, as the court required in its June 20, 2017 order. Dkt. No. 15 at 15. If that is what the plaintiff is asking, the court cannot grant his request. The law requires that a prisoner who is proceeding without prepaying the filing fee "shall be required to pay the full amount of the filing fee." 28 U.S.C. §1915(b)(1). The court cannot excuse the plaintiff from paying the full filing fee, because the law does not allow it. The court will deny as moot his request that the court allow him to proceed without prepaying the filing fee, because the court already has granted that request.

### III. Screening of the Plaintiff's Amended Complaint (Dkt. No. 21)

The law requires the court to screen complaints brought by prisoners seeking relief against a governmental entity, or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint, or part of it, if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

To state a cognizable claim under the federal notice pleading system, the plaintiff must provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). A plaintiff does not need to plead specific facts, and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint that offers "labels and conclusions," however, or "formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Id. (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted).

In considering whether a complaint states a claim, courts follow the two-step process in Twombly. First, they must "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. A plaintiff must support legal conclusions with factual allegations. Id. Second, if there are well-pleaded factual allegations, courts must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that the defendants: 1) deprived him of a right secured by the Constitution or laws of the United States; and 2) acted under color of state law. Buchanan-Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's *pro se* allegations, "however inartfully pleaded," a liberal construction. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

A. The Plaintiff's Allegations

In the amended complaint, the plaintiff repeats his original allegations against defendants Kamphuis and Muenchow. He alleges that he is disabled: he has bipolar type 1, a learning disorder, post-traumatic stress disorder and borderline personality. Dkt. No. 21 at 5. Kamphuis allegedly repeatedly denied the plaintiff's requests for accommodations under the ADA. Dkt. No. 21 at 3-5. Kamphuis told the plaintiff that he needed to provide documentation of his disability, but the plaintiff could not get copies of the health records that would have proven his disability. Id. at 4. The plaintiff also alleges that Kamphuis denied him access to the courts, resulting in the loss of his ability to petition the Wisconsin Supreme Court in his criminal case. Id. at 6.

The plaintiff alleges that he filed inmate grievances about the denial of his requests for ADA accommodations, and that Muenchow upheld the denials. Id. at 8-11. He alleges that, in upholding the denials over the course of three

5

years, Muenchow did not check the facts and "doctor disability reports, paperwork from the year [the plaintiff] was at Wisconsin Resource Center[.]" Id. at 10. As a result, the plaintiff argues that he did not get equal access to programs, services and activities, which led to the denial of access to the courts. Id. at 11.

The plaintiff adds in the amended complaint that defendant Hartman—whom he identifies as being in the business office/legal loans—denied him access to the courts. Id. at 7. Hartman allegedly "impeded" his legal loan, which he had requested so that he could petition the Wisconsin Supreme Court for review of his criminal cases. Id. He says that Hartman told him that, because he had lost his appeal in the Wisconsin Court of Appeals, he could not go to the Wisconsin Supreme Court. Id.

The plaintiff alleges that "B. Fisher," as the warden, was responsible for the operations of WCI and was the reviewing authority for many of the complaints the plaintiff filed about the denial of ADA accommodations. Id. at 12. The plaintiff also says that he made a written request to "Mr. Foster as warden in August 2016" to look into why he had been denied accommodation; the plaintiff alleges that "he" talked to Kamphuis to get her story, but failed to check the plaintiff's record himself to see that the plaintiff had a disability. Id. The court notes that at the time the plaintiff filed his complaint, Brian Foster was (and still is) the warden of WCI. The court will assume that the plaintiff meant to sue Brian Foster, and to make these allegations against Brian Foster.

6

The plaintiff alleges that defendant Schmidt is the psychological services supervisor, and that defendant DeBlanc is with psychological services. Id. at 13. The plaintiff alleges that both of these defendants are part of his mental health care, and that he asked them for help getting his "ADA rights" by contacting the ADA coordinator, pursuant to policy. Id. at 13. They allegedly would not help the plaintiff, which he asserts resulted in the continued denial of his rights under the ADA. Id.

The plaintiff alleges that the Wisconsin Department of Corrections determined that he did not qualify for ADA accommodations, without checking the record. Id. at 14.

Finally, the plaintiff sued defendant John Doe "because of all the hell staff put me though for 4 years[s] to get my civil rights so I could have meaningful court access—to show how one probation supervisor hate of me put me in prison for 20 yr on a sentence the D.A. in 2000 want 8 years no prison." Id. at 15. He states that suing John Doe will leave the door open to ensure he gets justice. Id.

For relief, the plaintiff seeks accommodation of his rights under the ADA and RA. He also seeks monetary damages. Id. at 16.

B.   Analysis

To establish a violation of Title II of the ADA, "the plaintiff must prove that he is a 'qualified individual with a disability,' that he was denied 'the benefits of the services, programs, or activities of a public entity' or otherwise subjected to discrimination by such an entity, and that the denial or

7

discrimination was 'by reason of' his disability." Wagoner v. Lemmon, 778 F.3d 586, 592 (7th Cir. 2015) (quoting Love v. Westville Corr. Ctr., 103 F.3d 558, 560 (7th Cir. 1996)); see also 42 U.S.C. §12132. The term "qualified individual with a disability" means,

> an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. §12131. Analysis under the Rehabilitation Act is essentially the same, except that the RA includes an additional element requiring that the entity denying the plaintiff access receive federal funds. Jaros v. Ill. Dep't of Corr., 684 F.3d 667, 671-72 (7th Cir. 2012). "[B]ecause the ADA addresses its rules to employers, places of public accommodation, and other organizations, not to the employees or managers of these organizations," a plaintiff may not proceed against defendants in their individual capacities—the proper defendant is the organization or the individual in his or her official capacity. Walker v. Snyder, 213 F.3d 344, 346 (7th Cir. 2000) (overruled on other grounds).

The plaintiff alleges that defendants Muenchow, Kamphuis and Foster repeatedly failed to make reasonable accommodations for his disabilities, resulting in a lack of meaningful access to the courts. At this early stage, that is enough for the court to allow him to proceed against those three defendants on his claims under the ADA and the RA. 42 U.S.C. §12131; Sch. Bd. of Nassau Cty. v. Arline, 480 U.S. 273, 288 n.17 (1987) (requirement for "reasonable accommodations" under the RA). The plaintiff also alleges that

defendants Schmidt and DeBlanc failed to contact the ADA Coordinator to get him help for his disability. At this early stage, the court will allow the plaintiff to proceed on claims against Schmidt and DeBlanc under the ADA and RA. The plaintiff may proceed against defendants Muenchow, Kamphuis, Foster, Schmidt and DeBlanc in their official capacities.

The court also will allow the plaintiff to proceed on an access to the courts claim based on his allegations that the denial of the requests for accommodations and the denial of his request for a legal loan resulted in the inability to petition the Wisconsin Supreme Court regarding his criminal case. See Bounds v. Smith, 430 U.S. 817, 820 (1977); Gentry v. Duckworth, 65 F.3d 555, 558 (7th Cir. 1995). He may proceed on this claim against defendants Kamphuis, Muenchow and Hartman.

The court will dismiss defendant John Doe, because the plaintiff doesn't make any specific allegations against John Doe. The plaintiff admits that he has sued John Doe only "to keep the door open."

## IV. Motion Use of Release Account Funds for Copies and Motion for Appointment of Counsel (Dkt. No. 25)

In this motion, the plaintiff first states that he wants the court to have certain documents, which he lists. Dkt. No. 25 at 1-2. He attaches these documents to his motion. Id. at 13-40; Dkt. No. 25-1.

Next, the plaintiff asks the court to allow him to use his release account funds for his "legal needs," which he describes as "copies and other needs so I can at least have needed documentation." Dkt. No. 25 at 3.

9

Courts in this district have noted that "[n]othing in the [PLRA] can be interpreted as congressional intent that prisoners deplete savings or release account balances in order to pay off their filing fee debts." Wilson v. Anderson, No. 14-CV-0798, 2014 WL 3671878, at *3 (E.D. Wis. July 23, 2014) (declining to order that a prisoner's full filing fee be paid from his release account, "[g]iven the [DOC's] rationale for segregating funds into a release account" and the absence of any statutory authority compelling the court to do so) (citations omitted). This rationale applies here, and the court will apply the reasoning in Wilson to encompass requests by prisoners to use their release accounts to cover litigation costs. See Peace v. Larson, No. 15-CV-276, 2016 WL 4126470, at *2 (E.D. Wis. August 2, 2016).

Denying prisoners the use of their release accounts to fund litigation costs is prudent given that those accounts are "restricted account[s] maintained by the [DOC] to be used upon the prisoner's release from custody." Id. Permitting a prisoner to invade that account for litigation costs could damage that prisoner's likelihood of success post-incarceration, see Wis. Adm. Code. §DOC 309.466 (stating that disbursements from a prisoner's release account are authorized "for purposes that will aid the inmate's reintegration into the community"), especially if the prisoner is overly litigious. As the Seventh Circuit has instructed, "like any other civil litigant, [a prisoner] must decide which of [his] legal actions is important enough to fund," Lindell v. McCallum, 352 F.3d 1107, 1111 (7th Cir. 2003); if a prisoner concludes that "the limitations on his funds prevent him from prosecuting [a] case with the full

10

vigor he wishes to prosecute it, he is free to choose to dismiss it voluntarily and bring it at a later date." Williams v. Berge, No. 02-CV-10, 2002 WL 32350026, at *8 (W.D. Wis. Apr. 30, 2002). He is not free, however, to tap into his release account to cover those legal costs. The court will deny the plaintiff's motion to use release account funds for copies and other expenses.

The court notes that the plaintiff is incarcerated at Waupun Correctional Institution, and that institution participates in the court's prisoner e-filing program. This means that the plaintiff doesn't have to mail documents to the court, so he should not need many copies to litigate this case. The plaintiff has been able to submit numerous documents to the court so far via prisoner e-filing. And at this point, there is nothing he needs to submit.

The plaintiff also has asked the court to appoint counsel to represent him. Dkt. No. 25. He states that he has severe learning disabilities and that he can't help himself because the prison calls him a "liar" and "game player." Id. at 4. The plaintiff also states that his learning disorder has frustrated his contact with attorneys he has written. Id. at 5.

In a civil case, the court has the discretion to recruit counsel for individuals unable to afford one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). First, however, the plaintiff must make reasonable efforts to hire counsel on his own. Pruitt v. Mote, 503 F.3d 647, 653 (7th Cir. 2007). Generally, to show the court that he has tried to find a lawyer on his own, the court requires a plaintiff to contact at least three attorneys, and to

provide the court with (1) the attorneys' names, (2) their addresses, (3) the date and the way the plaintiff attempted to contact them, and (4) the attorneys' responses.

After the plaintiff demonstrates that he has made a reasonable attempt to find an attorney on his own, the court will decide "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it." Navejar, 718 F.3d at 696 (citing Pruitt, 503 F.3d at 655). The court looks, not only at a plaintiff's ability to try his case, but also at his ability to perform other "tasks that normally attend litigation," such as "evidence gathering" and "preparing and responding to motions." Id. "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyering willing and able to volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

Previously, the court determined that the plaintiff had made a reasonable attempt to find an attorney on his own by contacting fifteen attorneys. Dkt. No. 15 at 12. The court will continue to the second Pruitt factor. Based on the plaintiff's filings, the court still finds that the plaintiff is able to proceed on his own at this stage. The plaintiff has filed an amended complaint, as directed by the court. He also has filed several other motions and supporting documents. Based on these filings, the court finds that the plaintiff has a good grasp of the facts of his case, and that he has the ability to present his claims to the court.

The court understands that the plaintiff says he has a severe learning disability, which makes it difficult for him to litigate. Despite this disability, however, the plaintiff has demonstrated the ability to present his arguments and claims understandably. The court will deny without prejudice the plaintiff's most recent motion to appoint counsel.

## V.     Motion (Dkt. No. 27)

Finally, on April 9, 2018, the court received a motion from the plaintiff. Dkt. No. 27. He begins by asking whether he's made a mistake, because he hasn't heard from the court in eight months, and the court hasn't verified that it received his amended complaint. Id. at 1. He goes on to reiterate the claims in his complaint, and to tell the court about some other events.

The court will construe this motion as a motion for a status report. The court regrets that the plaintiff has not heard from the court in such a long time. It is no excuse, but the court's caseload is very heavy, and the court is behind on many cases. The court now has ruled on the plaintiff's outstanding motions, and has screened his complaint. The next step is for the defendants to answer the complaint. Once the defendants answer, the court will issue a scheduling order, setting deadlines for the next steps in the case. The court apologizes to the plaintiff for its delays.

## VI.    Conclusion

The court **DENIES AS MOOT** that plaintiff's motion for extension of time to file amended complaint. Dkt. No. 20.

The court **DENIES AS MOOT** the plaintiff's second motion for leave to proceed without prepayment of the filing fee. Dkt. No. 22.

The court **DISMISSES** defendant John Doe.

The court **DENIES** the plaintiff's motion for permission to use his release account to pay for copies. Dkt. No. 25.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to appoint counsel. Dkt. No. 25.

The court **GRANTS** the plaintiff's motion for a status report. Dkt. No. 27.

The court **ORDERS** that, under an informal service agreement between the Wisconsin Department of Justice and this court, copies of plaintiff's amended complaint (Dkt. No. 21) and this order are being electronically sent to the Wisconsin Department of Justice for service on the state defendants.

The court **ORDERS** that, under the informal service agreement between the Wisconsin Department of Justice and this court, the defendants shall file a responsive pleading to the complaint within sixty days of receiving electronic notice of this order.

The court **ORDERS** that the parties shall not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

Dated in Milwaukee, Wisconsin this 11th day of June, 2018.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**United States District Judge**