UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

SHAWN MURPHY,

                Plaintiff,

v.                                             Case No. 16-cv-1462-pp

NICOLE KAMPHUIS, *et al.*,

                Defendants.

---

**ORDER DENYING PLAINTIFF'S RENEWED MOTION FOR ADA ACCOMMODATIONS (DKT. NO. 50), DENYING PLAINTIFF'S FIRST MOTION FOR SUMMARY JUDGMENT (DKT. NO. 51), DENYING PLAINTIFF'S MOTION REGARDING ADA ACCOMMODATIONS (DKT. NO. 54), DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 57), DENYING AS MOOT PLAINTIFF'S MOTION FOR PEN INSERT (DKT. NO. 65), GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE (DKT. NO. 66), GRANTING PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE TO HIS THIRD REQUEST FOR DOCUMENTS (DKT. NO. 87) AND DIRECTING DEFENDANTS TO RESPOND TO PLAINTIFF'S SECOND MOTION FOR SUMMARY JUDGMENT (DKT. NO. 60)**

---

Plaintiff Shawn Murphy is a state prisoner representing himself. He filed an amended complaint, alleging that the defendants violated his rights under the Americans with Disabilities Act (ADA) and the Rehabilitation Act (RA), and asserting that they denied him access to the courts. Dkt. No. 21. On June 11, 2018, the court issued an order screening the amended complaint and permitting the plaintiff to procced on the following claims: (1) that defendants Muenchow, Kamphuis and Foster repeatedly failed to make reasonable accommodations for the plaintiff's disabilities, resulting in a lack of meaningful access to the courts, in violation of the ADA and the RA; (2) that defendants

1

Schmidt and DeBlanc failed to contact the ADA Coordinator to get the plaintiff help for his disability, in violation of the ADA and RA; and (3) that defendants Kamphuis, Muenchow and Hartman denied the plaintiff access to the courts when they denied his requests for accommodations and denied his request for legal loan, resulting in the inability to petition the Wisconsin Supreme Court regarding his criminal case. Dkt. No. 30 at 8-9.

The plaintiff has filed two motions for summary judgment, dkt. nos. 51, 60, and the defendants have filed one motion for summary judgment, dkt. no. 67. In addition to the dispositive motions, the plaintiff has filed a renewed motion for ADA accommodations, dkt. no. 50, a motion regarding ADA accommodations, dkt. no. 54, a motion to appoint counsel, dkt no. 57, a motion for pen inserts, dkt. no. 65, a request to file an attachment to his second motion for summary judgment, dkt. no. 66, and a response to the defendants' response to his third request for production of documents, dkt. no. 87.

I.    **Plaintiff's Renewed Motion for ADA Accommodations (Dkt. No. 50)**

The plaintiff has filed a renewed motion for accommodations under the ADA and the RA. Dkt. No. 50. The plaintiff states that, unlike his prior motions in which he requested relief for the defendants' alleged failure to accommodate his disabilities, in this motion he asks that *the court* accommodate his disabilities. Id. at 4. The plaintiff asks the court to look at the record, determine that he has a qualifying disability, and accommodate that disability in court. Id. at 8.

Previously, the court denied the plaintiff's motions for relief (Dkt. Nos. 44, 47) in which he argued that the *defendants* failed to accommodate his disability. See Dkt. No. 49. The court stated:

> In these motions, the plaintiff asks for the very same things that he asked for in his amended complaint. He asks for accommodations for his disabilities, and for damages. The plaintiff has not yet proven that he has a disability, and he has not yet proven that the defendants refused to accommodate his disabilities or denied him access to the courts. To prove those things, he must follow a legal process—the same process that every person who files a lawsuit in federal court must follow. First, he must ask the defendants to provide him with information about his case. This is called discovery. The court has issued an order, requiring the parties to exchange all of their discovery by April 19, 2019. Dkt. No. 46. Next, the plaintiff must decide whether he wants to file a motion for summary judgment; he also must respond to any motion for summary judgment that the defendants might file. The deadline for filing summary judgment motions is May 19, 2019. Id. If the court allows the plaintiff's claims to proceed beyond summary judgment, he then will have the chance to prove that he has disabilities and that the defendants deliberately failed to accommodate them.
>
> It is not appropriate legal procedure for the plaintiff to keep filing motions, asking for the very same relief that the plaintiff has asked for in the lawsuit. The court will not declare him the "winner" of the lawsuit unless and until he has gone through the proper legal process and proven his case.

Dkt. No. 49 at 2-3.

In the current motion, the plaintiff again argues that he has a disability, but he now wants the court to accommodate his disability. The fact remains that the plaintiff must prove that he has a disability—that is an issue in this case, as explained above. And to prove that, the plaintiff must follow the legal process the court discussed above.

The plaintiff also does not explain what accommodation he believes this court should provide. He says that because his brain doesn't work right, he

3

doesn't have equal access to the courts, and this is why he asks for accommodations in court. Dkt. No. 50 at 2. It is not clear from the motion, but it appears that the plaintiff is arguing that the "accommodation" he believes this court should provide him is to rule in his favor, find that he is disabled within the meaning of the ADA, and grant the relief he requests against the defendants. He states that if the court doesn't grant his request for accommodations from the court, "[t]he court will show itself violating the same rights but in the court." Id. at 3. The plaintiff appears to be continuing his pattern of asking the court to declare him the winner of the lawsuit before he has followed all the steps required. The court will deny this motion.

## II. Plaintiff's Motion Regarding ADA Accommodations (Dkt. No. 54)

In this motion, the plaintiff again argues that he is "100% qualified for accommodations to give [him] meaningful court access." Dkt. No. 54 at 1. He reiterates that he has a disability.

The plaintiff filed forty-nine pages of exhibits, including a Reasonable Modification/Accommodation Request form that he submitted on August 8, 2018. Dkt. No. 54-1 at 20. This form indicates that on September 12, 2018, ADA Coordinator Aimee Wilson approved the plaintiff's request for accommodation/modification and allowed him one to three hours per week of additional library time to work on his legal work. Id. The plaintiff states that the "main problem" is the librarian, Mr. Webster (not a defendant), who doesn't believe in the ADA or in giving the plaintiff extra library time. Id. at 3. The plaintiff states that he can barely work with Mr. Webster, who thinks he can

4

teach the plaintiff and who "drives [the plaintiff] nuts," and who does the schedule for the library so the plaintiff does not get his accommodation. Id. The plaintiff states that he filed several complaints about this and that Mr. Webster and Mr. Helmer, who is the Education Director, did not do anything to help him. Id. at 3-4.

The plaintiff also states that he wrote a letter to the DOC about this issue and that defendant Warden Brian Foster responded to the letter. Id. at 5. He attaches a letter dated February 8, 2019 from Warden Foster which states:

> Your letter to the Director of the Department of Corrections was forwarded to me for review and response. In your correspondence you contend that your disability, as it relates to the use of the library at WCI, is not being accommodated.
>
> I noted that you're in the process of addressing the current matter through litigation and I have communicated with you regarding this issue in the past. It has not been determined, nor were you able to support your assertion of having a disability. Nonetheless, in consultation with the Education Department, you will be afforded an opportunity for extra library time to address your needs. Specifically, each week, once all library passes are scheduled, up to 3 extra hours of library time per week may be given to you to work on [y]our legal needs. The additional hours will be based on availability and will not displace other inmates from attending the library.

Dkt. No. 54-1 at 29.

Next, the plaintiff asks the court to inform Waupun Correctional Institution that to force him to have psychological treatment from defendant Dr. DeBlanc is a conflict of interest because Blanc is a defendant in this case. Dkt. No. 54 at 7-8. The plaintiff states that "I'm not saying she has used the fact she is my provider to help herself or her emply. [sic] But she could easy add to report, or word reports to make readers see things different." Id.

5

According to the plaintiff, the DOC will not let him see another provider, he cannot get the mental health treatment he needs, he is having problems thinking and he thinks he's "losing [his] mind." Id. at 8. The plaintiff states that the prison has impeded his due process and equal protection rights by putting stress on him. Id. at 9. He references urogenital problems he had before arriving at Waupun in 2014 and how he has problems urinating. Id. The plaintiff states that he received a conduct report and went to the "hole" because he could not urinate for a drug test. Id. He states that his mental health is getting bad, that he's going into a rage, and that the DOC and staff are hurting him because he stands up for himself. Id. at 11.

As explained above, one of the issues the court is going to have to decide is whether the plaintiff has a disability. The plaintiff wants the court to tell the defendants that he has a disability and to accommodate his disability. The court cannot do this until the plaintiff has proven, through the proper procedures, that he has a disability. The court has explained this to the plaintiff. Regarding Dr. DeBlanc continuing to treat the plaintiff despite being a defendant in this case, the court understands how this could be frustrating for the plaintiff. But the court does not have the authority to tell the Department of Corrections which doctors should treat which patients. That decision is up to the DOC. There may not be any other providers available. The DOC may not have contracts with other providers, or may have policies preventing it from using certain private providers. Those are issues for theDOC to determine. As for the plaintiff's other concerns about his mental health, if he believes that the

Waupun staff are violating his rights regarding his mental health treatment, he may file a lawsuit about that issue. Those are not issues the court can address in this ADA case. The court will deny the plaintiff's motion regarding ADA accommodations.

### III. Plaintiff's Motion to Appoint Counsel (Dkt. No. 57)

On April 3, 2019, the plaintiff filed a renewed motion to appoint counsel. Dkt. No. 57. This is his fifth request that the court appoint counsel to represent him. See Dkt. Nos. 12, 25, 38, 42. In support of this fifth motion, the plaintiff states that (1) he cannot afford a lawyer; (2) his imprisonment has greatly limited his ability to litigate, the issues involved in this case are complex, the defendants have been trying to frustrate and impede his progress in this case because they know they failed to follow the law; (3) he has been assaulted and brutalized as the defendants found that he has been speaking the truth all along, and he cites to video feed from a March 13, 2018 incident; (4) the defendants will not let the plaintiff have needed documents for discovery because the documents DOC-400, DOC-455, and DOC-2182 show true statements in inmate complaints; (5) Dr. DeBlanc, who is a defendant in this case, is still the plaintiff's psychological provider which is a conflict of interest; (6) he suffered a violation of his right to meaningful access to the law library because he received an "ADA accommodation" on September 12, 2018 to work an additional one to three hours in the library on his legal work, but this has not been honored; (7) the defendants conspired to stop Disability Rights Wisconsin from helping him; and (8) the record speaks for itself because two

records from the "DCC" (presumably, the Division of Community Corrections) show that the DOC had a document in which the plaintiff was found to be a "qualified person" in 2004 and had disability reports from his providers in 2011. Dkt. No. 57 at 1-6.

As the court has stated before, in a civil case, the court has the discretion to recruit counsel for individuals unable to afford one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). First, however, the plaintiff must make reasonable efforts to hire counsel on his own. Pruitt v. Mote, 503 F.3d 647, 653 (7th Cir. 2007). Generally, to show the court that he has tried to find a lawyer on his own, the court requires a plaintiff to contact at least three attorneys, and to provide the court with (1) the attorneys' names, (2) their addresses, (3) the date and the way the plaintiff attempted to contact them, and (4) the attorneys' responses.

After the plaintiff demonstrates that he has made a reasonable attempt to find an attorney on his own, the court will decide "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it." Navejar, 718 F.3d at 696 (citing Pruitt, 503 F.3d at 655).

> When determining whether to appoint counsel, the district court must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel. Pruitt, 503 F.3d at 655. Competence and difficulty are intertwined, therefore "[t]he difficulty of the case is considered against the plaintiff's litigation capabilities, and those capabilities are examined in light of the challenges specific to the case at hand." Id. The question is not whether the pro se litigant would be as

> effective as a lawyer, but rather whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case. Id. The inquiry considers all tasks that normally attend litigation including evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial. Id. To the extent it is able, the district court must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations, and any other characteristics that may limit the plaintiff's ability to litigate the case. Id. The district court must also consider the complexities of the advanced stages of litigation when the case has moved past the pleading stage. Perez v. Fenoglio, 792 F.3d 768, 785 (7th Cir. 2015).

Pennewell v. Parish, 923 F.3d 486, 490-91 (7th Cir. 2019). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

Previously, the court determined that the plaintiff had made a reasonable attempt to find an attorney on his own by contacting fifteen attorneys. Dkt. No. 15 at 12. In its June 11, 2018 order, however, the court denied without prejudice the plaintiff's second motion to appoint counsel, stating that

> [b]ased on the plaintiff's filings, the court still finds that the plaintiff is able to proceed on his own at this stage. The plaintiff has filed an amended complaint, as directed by the court. He also has filed several other motions and supporting documents. Based on these filings, the court finds that the plaintiff has a good grasp of the facts of his case, and that he has the ability to present his claims to the court.
>
> The court understands that the plaintiff says he has a severe learning disability, which makes it difficult for him to litigate. Despite this disability, however, the plaintiff has demonstrated the

> ability to present his arguments and claims understandably. The court will deny without prejudice the plaintiff's most recent motion to appoint counsel.

Dkt. No. 31 at 12-13.

On December 17, 2018, the court denied without prejudice the plaintiff's third and fourth motions for to appoint counsel. Dkt. No. 45. The court reiterated that the reasoning from this June 11, 2018 order and added:

> Since the court's June 11, 2018 order, the plaintiff has filed several motions and other documents which demonstrate that he can proceed on his own despite his alleged limitations. He continues to demonstrate the ability to advocate for himself and, as stated below, has asked the court if he can proceed to conduct discovery and file a motion for summary judgment. See Dkt. No. 43. Given this, the court will deny without prejudice the plaintiff's motions to appoint counsel.

Dkt. No. 45 at 3-4.

Before the plaintiff filed this fifth motion to appoint counsel, he filed his first motion for summary judgment. Dkt. No. 51. Since filing this motion, the plaintiff has filed another motion for summary judgment, supported by proposed findings of fact, a brief, and exhibits. Dkt. Nos. 60-64. He also has filed two briefs and exhibits in response to the defendants' motion for summary judgment. Dkt. Nos. 81, 82. Although the plaintiff continues to try to get around the litigation process by filing motions asking the court to declare him the winner of the lawsuit before the court has seen evidence, the court has not had difficulty understanding what the plaintiff wants, or why he believes the court should grant him the relief he requests. The fact that the court has not yet granted him the relief he requests does not mean that he has not presented his case quite thoroughly, and relatively clearly. Based on the plaintiff's filings

since he filed his fifth motion to appoint counsel, it appears that his concern about access to the law library and, specifically, additional time in the library, is no longer an issue. Most of the plaintiff's other concerns in support of his fifth motion to appoint counsel are not relevant to resolution of the motion.

Throughout this case, the plaintiff has filed documents that cite case law, that argue in support of his claims, and that are supported by many pages of exhibits. And he recently filed a second motion for summary judgment that complies with the Eastern District of Wisconsin's Local Rules in that it includes a supporting brief and proposed findings of fact that cite to the record. The court is going to order the defendants to file a response to the plaintiff's second motion for summary judgment. If this case survives beyond the summary judgment stage, the court will recruit a lawyer to represent the plaintiff. But the plaintiff has shown that he can represent himself up through the summary judgment stage. The court will deny without prejudice his fifth motion to appoint counsel.

## IV. Plaintiff's Motion for Pen Insert (Dkt. No. 65)

On May 7, 2019, the plaintiff filed a motion asking the court to order Waupun to return pen inserts to inmates in segregation. Dkt. No. 65. He states that the flexible pencils that staff gave him are "no good" to write legal documents. Id. Since filing this motion, the plaintiff has filed additional documents, including two response briefs to the defendants' motion for summary judgment and a ninety-page response to the defendants' proposed findings of fact. Dkt. Nos. 81, 82, 83. The court has been able to read all those

11

documents; while it may be difficult for the plaintiff to use the flexible pencil, using that pencil is not blocking his access to the court. And generally, the court does not insert itself into prison policy decisions. Waupun has reasons for requiring inmates in segregation to use flexible pencils, and the court cannot substitute its judgment for that of the prison staff. The court will deny this motion.

**V.  Plaintiff's Motion for Leave to File (Dkt. No. 66)**

On May 13, 2019, the plaintiff filed a one-page document which he asks the court to file as an attachment to his second motion for summary judgment. Dkt. No. 66. In this filing, the plaintiff states, "I believe I'm not getting across that coping skills (mitigating – measures) even with coping skills I still have visual sequencing and visual memory problems." Id. The plaintiff also states: "3 years to write complaint. Putting words copied [sic] down done mean understanding. Getting no extra law library left big gaps in my understanding. How to fight for my civil rights the U.S. Supreme Court ruled on coping skills and mitigating measures in 143 L.E.2d 1133." Id.

The court will construe this filing as a supplement to the plaintiff's brief in support of his second motion for summary judgment, and will ask the clerk's office to designate it that way on the docket.

**VI.  Plaintiff's Motions for Summary Judgment (Dkt. Nos. 51, 60)**

On February 22, 2019, the plaintiff filed his first motion for summary judgment. Dkt. No. 51. He stated that this was a partial motion for summary judgment and that it pertained only to facts, and not to the defendants. Id. at

12

1. Specifically, the plaintiff stated that the motion showed that he is a "qualified individual with a disability" under the ADA and the RA, and that "later" he would show that the defendants violated the law. Id. at 6. He went on to describe why he believes he is a qualified individual with a disability, which he based on a Social Security Administration evaluation as well as psychiatric and physician reports. Id. at 7-13. The defendants opposed the plaintiff's motion, alleging that it did not comply with the Local Rules because, among other things, the plaintiff did not file a separate proposed findings of fact that cites to admissible evidence. Dkt. No. 58 at 2-3.

On April 26, 2019, the plaintiff filed his second motion for summary judgment, along with a supporting brief, proposed findings of fact and exhibits. Dkt. Nos. 60-64. The defendants have not filed a response to this motion, probably because it is the plaintiff's second summary judgment motion and the court did not previously order them to respond to it, and maybe because the defendants filed their own motion for summary judgment on May 20, 2019. But a response from the defendants to the plaintiff's second motion for summary judgment, including a response to the plaintiff's proposed findings of fact, would be helpful to the court in determining whether the plaintiff's claims survive summary judgment. In their response, the defendants should specifically address the arguments in the plaintiff's supporting brief regarding whether he is a qualified individual with a disability; what accommodations, if any, the defendants may provide to inmates with issues such as the plaintiff says he faces; and whether access to the law library had an impact of the

plaintiff's access to the courts. The defendants also should file a response to the plaintiff's proposed findings of fact.

The plaintiff's first, partial, motion for summary judgment does not comply with the Local Rules, and the court will deny that motion. The court will order the defendants to respond only to the plaintiff's second motion for summary judgment. Once the plaintiff's second motion for summary judgment is fully briefed, the court will resolve both the defendants' motion for summary judgment and the plaintiff's second motion for summary judgment.

**VII. Plaintiff's Reply to Defendants' Response to Plaintiff's Third Request for Production of Documents (Dkt. No. 87)**

In this motion, the plaintiff alleges that the defendants are impeding his right to access to the court by withholding information that shows that the defendants knew about his impairment and withheld accommodations. Id. at 2. It appears that the plaintiff may have served a request for production of documents on the defendants, to which they responded in a document dated April 10, 2019. Id. at 31-35. The plaintiff appears to be objecting to the response. Id. at 1.

The court first notes that the deadline for the parties to complete discovery was May 3, 2019. Dkt. No. 56. The deadline passed over four months ago. If the plaintiff did not receive the documents he requested in discovery, he should have contacted defense counsel and tried to work out the issue. If he could not work out the issue with opposing counsel, he could have filed a motion to compel production with this court, under Fed. R. Civ. P. 37 and Civil

14

L.R. 37. Instead, the plaintiff waited four months and filed this motion *after* both he and the defendants had filed motions for summary judgment.

The plaintiff's third request for production of documents asked for a full record of three inmate complaints he filed, to which the defendants responded that the plaintiff could find those items at Bates pages 367-824 of the discovery they'd already provided him. Dkt. No. 87 at 31-32. He asked for all documents relating to his mental health treatment from December 2000 through December 2013; the defendants responded that they had requested the plaintiff's psychological records from the Department of Corrections, and that they would provide those materials once they received and reviewed them. Id. at 32-33. The plaintiff's third "request" wasn't a request at all—he cited various Supreme Court cases and then argued that documents about mental health are "relevant." He concluded by stating, "So what are you going to do to follow law?" Id. at 33. The defendants appropriately objected to this "request," because it wasn't a request for documents. Id. at 34. Finally, he requested copies of two Division of Adult Institutions policies and "Health care record." Id. at 34. The defendants objected, arguing that there was no "health care record" policy, and that there were many DAI policies that contained the words "health care record." Id. Nonetheless, the defendants noted that they already had provided the plaintiff with the two specific policies he'd requested. Id.

In his motion, the plaintiff says that because he was in DOC custody for thirteen years, and had mental health evaluations during that time, his probation records should contain evidence of his alleged disability. Id. at 1. He

says that he knows these records exist, because he did an open records request and got many of them (he attached many of them to his motion). Id. at 4-5. He asks the court to "order Waupun Correctional to follow the law," citing Wis. Admin. Code §DOC 309.155(3), which directs prison libraries to make "[s]pecial provisions . . . to provide access to legal materials for inmates with a special legal need and for inmates with a special need, such as illiteracy." Id. at 5.

To the extent that the plaintiff's motion asks the court to require the defendants to accommodate his disability, the court will deny that request; again, that is one of the subjects of this lawsuit, and unless and until the court concludes that the plaintiff has a disability, it will not order the defendants to accommodate it.

To the extent that the plaintiff is asserting that the defendants never turned over to him the documents they said they'd asked for from the DOC, the court will give the defendants an opportunity to respond to that assertion.

**VIII. Conclusion**

The court **DENIES** the plaintiff's renewed motion for ADA accommodations. Dkt. No. 50.

The court **DENIES** the plaintiff's first motion for summary judgment. Dkt. No. 51.

The court **DENIES** the plaintiff's motion regarding ADA accommodations. Dkt. No. 54.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to appoint counsel. Dkt. No. 57.

The court **DENIES AS MOOT** the plaintiff's motion for pen insert. Dkt. No. 65.

The court **GRANTS** the plaintiff's motion for leave to file. Dkt. No. 66. The Clerk of Court shall designate the document at dkt. no. 66 as a supplement to the plaintiff's brief in support of his second motion for summary judgment, dkt. no. 63.

The court **GRANTS** the plaintiff's motion regarding the defendants' response to his third request for production of documents. Dkt. No. 87. The court **ORDERS** that within **fourteen days** of the date of this order, the defendants shall file a response, indicating whether they provided the plaintiff with the documents he sought in paragraph 2 of his third request for production of documents.

The court **ORDERS** that the defendants shall respond to the plaintiff's second motion for summary judgment, dkt. no. 60, by the end of the day on **October 18, 2019.** The plaintiff may file a reply within fourteen days after he receives the defendants' response.

Dated in Milwaukee, Wisconsin this 16th day of September, 2019.

**BY THE COURT:**

**HON. PAMELA PEPPER
United States District Judge**